# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CEASAR HARPER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-4490** |
| **N. BURL CAIN, WARDEN** | **SECTION "S"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, it is recommended that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.     STATE COURT PROCEDURAL BACKGROUND

The petitioner, Ceasar Harper, is incarcerated in the Louisiana State Penitentiary in Angola,

Louisiana.[2]  On March 8, 2004, Harper was indicted by a St. Tammany Parish grand jury for the

aggravated rape of S.B.[3]  The Louisiana First Circuit Court of Appeal summarized the relevant facts

of the case as follows:

> S.B., the victim, is the child of Kimberly Barnes, whose brother is Kerry Barnes, Sr., who is married to Dorothy Barnes.  The defendant is Dorothy's half brother.  On the evening of January 1, 2004, Kimberly, her aunt Dora, and Kerry went to a casino.  S.B., who was eight years old at the time, stayed at Dorothy's house with Dorothy and the defendant, who was living at Dorothy's house.  According to the testimony of Dorothy, during that evening she became suspicious of the defendant's behavior.  The defendant continually checked to make sure Dorothy was in her bedroom.  The defendant was also anxious for Dorothy to take a shower.  At approximately 2:00 a.m. on January 2, 2004, Dorothy walked down the hallway to the living room where S.B. was supposed to be sleeping.  When she entered the living room, she saw the defendant moving up and down on top of S.B., who was laying across a chair.  The defendant's shorts and underwear were pulled down, and S.B.'s pajama bottoms and underwear were pulled down.
>
> Dorothy testified that upon seeing this, she "exploded."  The defendant jumped off of S.B. and pleaded with Dorothy not to tell.  The defendant said that he was sorry and that he was not going to do it again.  He said that S.B. was not a virgin, and that he did not "break her in" bit that she was "already broken in."  Dorothy called her husband and her mother and told them what happened.  The police were also called.
>
> S.B. was taken to St. Tammany Hospital.  Her physical examination was within normal limits, which meant there was no evidence of trauma to her body.  From there, S.B. was taken to Children's Hospital where a "rape exam" was administered.  Several days later on January 6, 2004, S.B. was taken to the Children's Advocacy Center (CAC) on Covington, where she was interviewed by Charlene Mediamole, a licensed professional counselor and forensic interviewer.  Charlene testified at trial that S.B. provided a detailed description of sexual abuse and that there was no evidence that S.B. was coached or manipulated into making false allegations.  The videotaped CAC interview was played at trial.  S.B. testified at trial the defendant's "private part" touched her "front part."
>
> Dr. Scott Benton, an expert in the field of pediatric forensic medicine, examined S.B. on January 27, 2004.  At trial, Dr. Benton testified that S.B.'s hymen was normal and appropriate for her age.  He noted that her physical examination was normal.  Dr. Benton further testified that there can be physical penetration without the hymen being touched.  He noted that it is possible to have penetration of a young girl while the hymen remains "normal."  He stated that he had studied some pregnant women with intact normal hymens.  Dr. Benton noted and discussed studies showing that most sexually abused children who

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 1, Indictment, 3/8/04.

have suffered penetration, show no physical evidence of the penetration.  When asked to provide his conclusions regarding the examination of S.B., Dr. Benton responded, "I found relative to my exam and in general that she provided clear and detailed history of an event that was witnessed, that her physical examination was consistent with that history and didn't preclude from what she said to be true."

Courtney Felps, a forensic DNA analyst, testified at trial that fingernail scrapings from S.B.'s left hand were obtained from the victim's rape kit.  Upon examination, Felps found that the DNA from the fingernail scrapings was a mixture from two individuals.  Felps determined that out of 1.56 million people, the only two people who could have donated the markers in that profile were the victim and the defendant.  Felps further testified that breaking of the skin is not necessarily required to obtain DNA under a victim's fingernails.  She noted that DNA samples can be obtained where there is contact with the skin, such as by grabbing.

Sherri Harper, the defendant's mother, testified that on the night of the incident, Dorothy called her at approximately 2:30 a.m. and told her that the defendant had "fooled with" S.B. and that "there was blood everywhere."  When Sherri arrived at Dorothy's house, she did not see any blood.  Sherri further testified that Dorothy was angry with the defendant because he rented "about $400.00 worth of tapes to her."[4]  She also testified that Dorothy was angry with the defendant because the defendant helped Dorothy's husband maintain affairs with other women.

Dorothy testified that while she did not approve of the things the defendant and her husband did, she did not suspect the defendant was helping her husband "run around" with other women.  When Dorothy was asked on cross-examination if she told her mother that there was blood everywhere following the incident, Dorothy responded, "No, I never told her there was blood everywhere.  I never saw any blood.  If I would have saw (sic) blood, I would have told it to the detective."

State v. Harper, 925 So. 2d 773 (La. App. 1st Cir. 2006) (Table); State Record Supplemental Volume 1 of 1, Louisiana First Circuit Opinion, 2005-KA-1563, March 24, 2006.

Harper was tried before a jury on January 24, 26, 27, and 28, 2005, and was found guilty as charged by unanimous verdict.[5]  At a hearing held February 22, 2005, the state trial court denied

---

[4]The $400.00 was not for rentals, but refers to Dorothy's cable bill.  According to Dorothy, the defendant had ordered approximately $400.00 worth of Video on Demand x-rated movies.

[5]St. Rec. Vol. 1 of 1, Trial Minutes (4 pages), 1/24/05; Trial Minutes (3 pages), 1/26/05; Trial Minutes (5 pages), 1/27/05; Trial Minutes (3 pages), 1/28/05; Jury Verdict, 1/28/05.

Harper's motion for a new trial.[6] After he waived sentencing delays, the court also sentenced Harper that same day to life imprisonment without benefit of parole, probation, or suspension of sentence.[7]

On appeal, Harper's counsel alleged that the jury's verdict was in error because the only eyewitness was biased against him and the evidence was not sufficient to prove rape.[8] On March 24, 2006, the Louisiana First Circuit affirmed Harper's conviction and sentence finding that the evidence was sufficient to support the conviction under the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979) and relevant state law.[9]

Harper's conviction became final 30 days after the ruling of the Louisiana First Circuit, on April 24, 2006, because he did not seek rehearing or file for timely review in the Louisiana Supreme Court.[10] Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003)) (for AEDPA purposes an appeal is final when the state defendant does not timely proceed to the next available step in the state appeal process)).

---

[6]St. Rec. Vol. 1 of 1, Sentencing Minutes (2 pages), 2/22/05; Motion for a New Trial, 2/22/05. Later, on June 14, 2005, the court also denied Harper's pro se filed motion in arrest of judgment challenging the validity of the indictment. The court determined that it was without jurisdiction because the matter was on appeal. St. Rec. Vol. 1 of 1, Trial Court Order, 6/14/05; Motion in Arrest of Judgment, 6/6/05.

[7]St. Rec. Vol. 1 of 1, Sentencing Minutes, 2/22/05.

[8]St. Rec. Suppl. Vol. 1 of 1, Appeal Brief, 2005-KA-1563, 8/11/05.

[9]State v. Harper, 925 So. 2d at 773; St. Rec. Suppl. Vol. 1 of 1, 1st Cir. Opinion, 2005-KA-1563, 3/24/06.

[10]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do. The thirtieth day was Sunday, April 23, 2006; the end date falls to the next business day, April 24, 2006. See Fed. R. Civ. P. 6; La. Code Civ. P. art. 5059; La. Rev. Stat. Ann. § 1:55.

On November 29, 2006, Harper submitted an untimely[11] writ application, which was filed by the Louisiana Supreme Court on February 5, 2007.[12] The application was later denied without reasons on November 2, 2007.[13]

In the meantime, on March 19, 2007, Harper submitted an application for post-conviction relief, which was filed in the state trial court on March 22, 2007, raising five ineffective assistance of counsel claims and one prosecutorial misconduct claim.[14] The state trial court denied the application at a hearing held September 24, 2007.[15]

Harper filed a writ application in the Louisiana First Circuit on October 23, 2007.[16] The Court denied the application because Harper failed to provide supporting documentation in accordance with the court's procedural rules.[17] The Court instructed Harper to re-file his writ in proper form on or before February 21, 2008. Harper presented a second writ application on

---

[11]As noted above, under Louisiana law, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a writ application in the Louisiana Supreme Court. The thirtieth day was April 24, 2006. He signed his Louisiana Supreme Court writ application on November 29, 2006, which is presumed to be the earliest date on which he could have given it to prison officials for mailing. The writ application also was postmarked December 4, 2006, see Rec. Doc. No. 12, and filed February 5, 2007, see St. Rec. Suppl. Vol. 1of 1, La. S. Ct. Letter, 2/5/07. None of these dates were within the 30-day time period allowed by Louisiana law.

[12]See Rec. Doc. No. 12, for copy of the writ application No. 07-KH-231 obtained by the Court and separately filed. In contravention of the Court's briefing order, the State failed to provide a copy of the Louisiana Supreme Court records.

[13]State ex rel. Harper v. State, 966 So.2d 593 (La. 2007); St. Rec. Suppl. Vol. 1 of 1, La. S. Ct. Order, 2007-KH-0231, 11/2/07.

[14]St. Rec. Suppl. Vol. 1 of 1, Application for Post-Conviction Relief, 3/22/07 (signed 3/19/07).

[15]St. Rec. Suppl. Vol. 1 of 1, Minute Entry, 9/24/07.

[16]In contravention of the Court's briefing order, the State failed to provide a complete copy of the Louisiana First Circuit records. Nevertheless, a member of the Court's staff contacted the office of the clerk of the Louisiana First Circuit and was told that the writ, No. 2007-KW-2154, was filed in that Court on October 23, 2007.

[17]St. Rec. Suppl. Vol. 1 of 1, 1st Cir. Order, 2007-KW-2154, 12/27/07.

February 21, 2008, as instructed.[18]  However, on May 27, 2008, the Louisiana First Circuit again denied the application for failure to provide supporting documentation as required by the court's procedural rules.[19]

## II. FEDERAL HABEAS PETITION

On September 29, 2008, the clerk of court filed Harper's petition for federal habeas corpus relief alleging that the jury's verdict was in error because the only eyewitness was biased against him and the evidence was not sufficient to prove rape.[20]  The State filed an answer and memorandum in opposition to the petition, arguing that the petition should be dismissed as untimely filed.[21] Alternatively, the State contends that Harper's claim is without merit.

## III. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S.

---

[18]As noted previously, the State failed to provide a complete copy of the Louisiana First Circuit records. Nevertheless, a member of the Court's staff contacted the office of the clerk of the Louisiana First Circuit and was told that the writ, No. 2008-KW-0391, was filed in that Court on February 21, 2008.  See also, St. Rec. Suppl. 1 of 1, copy of writ application dated 2/20/08.

[19]St. Rec. Suppl. Vol. 1 of 1, 1st Cir. Order, 2008-KW-0391, 5/27/08.

[20]Rec. Doc. No. 1.

[21]Rec. Doc. No. 9.

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

320 (1997)). The AEDPA therefore applies to Harper's petition, which, for reasons discussed below, is deemed filed in this federal court on September 10, 2008.[23]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, the State urges the defense that the petition is not timely filed.

The State's timeliness analysis is replete with date and calculation errors.[24] Nevertheless, the State's resolve is correct. Harper's petition is untimely filed and should be dismissed for the reasons assigned below.

---

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Harper's petition was filed by the clerk of court on September 29, 2008, when pauper status was granted. Harper's signature on the petition was notarized and dated on September 10, 2008. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

[24]The State failed to take in to consideration the state mailbox rules, see Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006), in identifying the periods of tolled time. For example, the Louisiana First Circuit denied writ application No. 2007-KW-2154 on December 27, 2007, not January 2, 2008, as indicated by the State, Rec. Doc. No. 10-2, p. 2. The State also failed to take in to consideration the applicable state mailbox rules, see Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006), in identifying tolled time. The State's memorandum also demonstrates a lack of understanding of the law applicable to the AEDPA's finality determinations. For example, the State contends that Harper's conviction became final 90 days after his conviction was affirmed on appeal. Rec. Doc. No. 10-2, p. 2. Presumably, that is a reference to the period allowed under Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999). Ott provides that the 90-day period after a ruling by the state's highest court for filing for certiorari with the United States Supreme Court pursuant to U.S. Sup. Ct. Rule 13(1) is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A). This clearly does not apply here since Harper never pursued timely review in the Louisiana Supreme Court. His conviction instead became final 30 days after the Louisiana First Circuit's ruling when he did not so timely file. Butler, 533 F.3d at 314 (citing Roberts, 319 F.3d at 694-95) (for AEDPA purposes an appeal is final when the state defendant does not timely proceed to the next available step in the state appeal process)).

IV.    <u>STATUTE OF LIMITATIONS</u>

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[25]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  Harper's conviction became final on April 24, 2006, when he did not timely seek further review of the Louisiana First Circuit's opinion on direct appeal.  Therefore, under a literal application of the statute, Harper had until April 24, 2007, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in § 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005); <u>Fisher v. Johnson</u>, 174 F.3d 710, 713 (5th Cir. 1999), <u>cert. denied</u>, 531 U.S. 1164 (2001); <u>Cantu-Tzin v. Johnson</u>, 162 F.3d 295, 299 (5th Cir. 1998); <u>Davis v. Johnson</u>, 158 F.3d 806, 810 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1074 (1999).  Equitable tolling

_____

[25]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

    A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

    C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

    D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  <u>Pace</u>, 544 U.S. at 418-19; <u>Cousin</u>, 310 F.3d at 848.

Harper has not asserted any reason, and the Court's review of the record reveals none, that might fit the restrictive boundaries of rare or "exceptional circumstances" described in recent decisions addressing when the one-year period should be equitably tolled.  <u>See</u> <u>United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); <u>Fisher</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); <u>Cantu-Tzin</u>, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); <u>Davis</u>, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).  By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction

proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

<u>Flanagan</u>, 154 F.3d at 199 n.1; <u>accord</u> <u>Brisbane v. Beshears</u>, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); <u>Gray v. Waters</u>, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" under § 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. <u>Pace</u>, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); <u>Williams v. Cain</u>, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting <u>Villegas v. Johnson</u>, 184 F.3d 467, 469 (5th Cir. 1999)); <u>Smith v. Ward</u>, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. <u>Causey v. Cain</u>, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" <u>Carey v. Saffold</u>, 536 U.S. 214, 219-20 (2002); <u>Williams</u>, 217

F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

Using these standards, the one-year AEDPA limitations period began to run in Harper's case on April 25, 2006, the day after his conviction became final. The limitations period ran uninterrupted for 328 days, until March 19, 2007, when Harper signed[26] his application for post-conviction relief which was filed by the state trial court on March 22, 2007. The application remained pending until June 26, 2008, which was 30 days after the Louisiana First Circuit denied Harper's second writ application and he did not pursue further review.[27]

---

[26]For present purposes, the court will presume that the signature date is the earliest date on which petitioner could have submitted the pleading to prison officials for mailing to the state trial court.

[27]Contrary to the State's contention, Harper is not penalized for the days between denial of his first writ and the filing of the second writ since the second writ was filed within the time period granted by the Louisiana First Circuit. The period is therefore tolled in his favor.

The AEDPA statute of limitations ran for an additional 37 days, from June 27, 2008, to August 4, 2008, when it expired. Harper had no properly filed state post-conviction or other collateral review proceedings pending during that period.

As outlined in detail previously, Harper also submitted a writ application to the Louisiana Supreme Court during this time period on November 29, 2006.[28] That filing, however, was untimely under La. S. Ct. R. X§5(a) because it was submitted for mailing, postmarked, and filed more than 30 days after the Louisiana First Circuit ruled on Harper's direct appeal.[29] See Butler v. Cain, 533 F.3d 314, 317 (5th Cir. Jun. 25, 2008). Under federal habeas corpus law, this untimely filing cannot be considered in the tolling calculation. Id., at 317 (La. S. Ct. R. X§5(a) forbids any extension of time); Williams v. Cain, 217 F.3d at 309-11 (same). Under the AEDPA, Harper is not entitled to any tolling benefit as a result of the untimely Louisiana Supreme Court writ.

The record establishes that, after his conviction became final, Harper allowed more than one year to lapse without any properly pending state proceeding and without having filed a timely federal petition for habeas corpus relief. His federal petition, deemed filed on September 10, 2008, is untimely and must be dismissed for that reason.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Ceasar Harper for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time barred.

---

[28]See Rec. Doc. No. 12 (copy of the writ application obtained by the Court and separately filed).

[29]As noted above, pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 18th day of March, 2009.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE